Okay, Northfield Insurance v. Northbrook Industries. Mr. Saverin. Yes, good morning. My name is Philip Saverin. I'm here for North, make sure I get the name right, Northfield Insurance Company. I guess I want to start by saying that we appreciate the opportunity to address the jurisdictional issue that the court raised earlier, I guess this month. Unless there are any questions on that, I'll delve into the merits of it. That's the big issue for me. If you want to ignore it, that's your business. But I can tell you, I doubt we have jurisdiction. Let me address it then. I appreciate that opportunity. I think that we base that argument, or the jurisdictional argument, primarily on the Ultratech decision, which I think is conceptually indistinguishable from what we have here. The difference between Ultratech, as I see it, is that in Ultratech, the insured had cross-moved for summary judgment, and so the court went ahead and declared that there was... Yeah, there was a declaratory judgment. I mean, what we have here is a dismissal of a claim, right? We have a dismissal of the entirety of the complaint. The complaint was based on the absence of coverage. Yeah, but I mean, what we wanted, one claim is unright, right? One claim is dismissed, I thought, with prejudice. The other without. Is that not right? No, no, that's not what happened here. What happened here is that the district court... Isn't the other claim unright? Yes, the claim for, based on the court's ruling that there is a duty to defend, the question of whether or not there's a duty to indemnify is not right until the liability is determined, at which point the question of indemnity can be determined. So because the court found that there is a duty to defend, that renders the question of the duty to indemnify not right. Why did you ask the district court to certify under 54B? Why did we not? Yeah. Because under the Ultratech decision, we have, as we interpret it, Your Honor, we have... It really comes down to whether that, whether, I mean, this is procedurally distinguishable, isn't it? Ultratech does not involve this kind of determination, right? I would disagree with that, Your Honor, because the district court, in this case, not only granted their motion to dismiss, but also affirmatively found that Northfield does owe a duty to defend. It didn't end on declaratory judgment. It doesn't have anything that's enforceable by contempt. It doesn't have anything that, to me, has the practical effect of an injunction. But you could have sought certification under 54B. The question, as we see it, let me, there's several questions that I see in that which I'd like to answer. First of all, as far as being addressed by contempt, I understand the court's distinction of the Ultratech case because there was a cross motion. However, in a footnote, Ultratech said that contempt is not necessary for it to have the indicia of an injunction. So that's how I respond to that one. As far as the... It may not be necessary, but it would be an indicia of an injunction, wouldn't it? It would be an indicia, but the Ultratech case says very clearly in footnote seven that it's likely that if the carrier did not continue to defend, which is the same thing we have here, that it would be subject to contempt. So for that reason, we think it's indistinguishable. As far as having the practical effect, our key point there, Your Honor, is that if it's not reviewable now and we need to wait until final judgment, it is moot at that point so it becomes effectively unreviewable. The fact that the district court could certify it under Rule 54B is certainly a discretionary matter, and the Abbott case makes very clear that the concern is that a district court not be able to shield its rulings from effectively being reviewed at any point on appeal, which would be... Why would it render it moot? I mean, in my mind, if it says you have a duty to defend and you have to pay those litigation costs up front, why can't you recoup them with a later decision that says you didn't have the duty? That's a very good question, Judge Boodoo, and I say it's answered by this court's decision in Wellens that says that there is no right to recoupment under Georgia law, and that contrasts this case with the Mapp case, which we didn't cite in our supplemental brief, but that the other side did subsequently in their supplemental brief that came from the Fourth Circuit, which said that it was effectively reviewable because there they determined that it could be, that they could seek recoupment. I would agree with you, Judge, that if that was the case, then it would be effectively reviewable under the cases. However, given this court's decision, I believe it's the Wellens case if I'm saying it accurately, it's cited in our supplemental brief in any event that it is not effectively reviewable. I would also point out that both parties said that the question here is, does the, on the motion, is does Northfield owe a duty to defend? If yes, then the motion should be granted and the case should be dismissed. The other side in their motion said that the question of a duty to indemnify would not be ripe, and of course ripeness goes to subject matter jurisdiction. We said the same thing in our response brief, and yet the judge not only granted their motion, but affirmatively found that there was a duty to defend, and on top of that said, and I'm going to stay the case pending a ruling on the duty to indemnify. And the reason the court said that she had that, that the court had that discretion was in purposes of judicial economy. Well, if that's the case, Rule 54B certification would not have been issued because the requirement there is that there be an express finding of no reason for delay, and the court said there was no reason for delay because we're going to have this trial in the undulating case fairly soon. Of course, it wasn't fairly soon, but that's what the court determined. So whether you call it an injunction, whether you say it's effectively unreviewable from final judgment, or our third argument is that ripeness goes to subject matter jurisdiction, and so therefore the end of the court's jurisdiction was up or down on the duty to defend, and the court said duty to defend. At that point, the case should have been dismissed, and we should have been able to bring an appeal at that point. You could have moved to amend your complaint to drop that unright claim, right? That claim is, that claim, not that, whether there's a duty to defend goes to whether there's a duty to indemnify as well. Here's the problem you're having, Mr. Saffron. It seems to me, I mean, look, Congress has told us that we have jurisdiction over final, appeals from final judgments. It's also said that we can entertain appeals from injunctions. This is not. What you want to do is, you know, take Ultratech where we're getting further and further away from what an injunction actually is. Ah, it looks like an injunction. We got a declaratory judgment. It looks, it looks a lot like it. It has a practical effect of it. Now we're, now we're to a dismissal of a claim brought by the plaintiff. No counterclaim, no declaratory judgment, and we're saying, well, it's close enough for government work, and we're getting further and further away from what Congress said. Congress has given you some other avenues. You've given you 54B. You didn't even ask for it. You could have moved to amend your complaint to drop the unright claim, in which case then you might have a final judgment under 1291, right? Judge, we did not have a claim for a duty to indemnify. Our claim was that there was no duty to defend, which would then subsume the duty to indemnify. We did not have a separate count. You don't have a duty to indemnify either. That's going to be your position in the event that there is a judgment against the insured, right? Judge, I don't know if I'm going to convince you, but I believe that the only justiciable issue is a duty to defend. We could not bring a claim that there's a duty to indemnify. That was not a count in the complaint. The complaint was that there's no coverage because there's no duty to defend. So there was no claim for us to drop. And what I would say, Your Honor, is that if you don't— Well, then what's been said? I'm sorry? What's been said? What's been said is the judge on her own, a district court's own accord, when both parties were saying that there's no basis to determine a duty to indemnify if you find a duty to defend, the court of her own accord stayed the case and said, I'm going to hold this to decide the duty to indemnify. That wasn't anything that anyone asked the district court to do. In fact, both parties said that once you—that you either grant the motion to dismiss or you deny it and force them to answer, and then we could go on with the case. But the court of its own accord stayed the case, which we say immunized the case—immunized the question of a duty to defend from ever being appealed. But you didn't appeal the stay order. I didn't appeal the stay order. I appealed the order— You wanted to say she was wrong to stay it. What I'm saying—no, I'm not saying— That's a different— That's a separate— It sounds like you're saying that now. You're saying she shouldn't have stayed it. What I'm saying is that she should not have granted the motion to dismiss. The stay question is a separate order. I mean, it's a separate part of the ruling. That's not—we're appealing the part that says that there's a duty to defend. And if we're not able to appeal it now, Your Honor, it is not appealable from final judgment because it would be moot at that point because final judgment would be no longer a duty to defend. The fact that we could have sought a discretionary appeal still does not make it effectively reviewable from final judgment. Okay. To the extent the Chief will grant us a little leniency, what about the duty to defend? Why was the district court wrong on that? We're here at the procedural hurdles. Let's get to the substance. Thank you. Well, I mean, they're all important issues, so I don't want to give any of them—  —short shrift. But I will give my—I guess my elevated speech on that, and perhaps I can develop more on the rebuttal if that's agreeable. What we would say, Your Honor, is that all of the injuries that the plaintiff was alleging flowed directly from being held for sex trafficking. She says, in paragraph 2026, is the heartless allegations that she was forcibly kept in hotel rooms where there was prostitution, drugs, weapon-toting sex traffickers, and that all of these injuries flowed directly from either the exclusions for abuse or molestation or from assault and battery. And I wanted to point out something about the structure of this policy, which I think is critical, that the exclusions that I'm talking about are from coverage A for bodily injury and coverage B from personal and advertising injury. If it falls within the exclusion for assault and battery, that doesn't mean it's not covered. What that means is that it then falls within the separate endorsement that provides limited coverage for assault and battery. What the district court said is that some of these injuries that she was claiming, such as physical deterioration, such as sleep deprivation— Could have resulted from being forcibly kept in a hotel. Right, right. And not physical conduct. Right. And assault does not require physical contact. The assault definition of the policy, which of course is what we need to conscrue, is any attempt or threat to inflict injury to another. The battery portion requires physical contact. And so what we're saying there, Your Honors, is that the fact that the same injuries could exist without her having been held in hotel rooms for sex trafficking doesn't mean that the exclusions don't apply. Certainly, you could have physical deterioration. You could have sleep deprivation. You could have fatigue from the loss of a loved one or from depression or from any kind of interaction or lack or just mood disorders. Or being forced to have sex with multiple individuals within a short period of time. But because that's the genesis of the claim, of the injuries, and because the allegations are that these injuries resulted from being held for sex trafficking, it falls within the abuse and molestation. But for that, there wouldn't be any injuries as well as assault and battery. And then we go to the assault and battery limited coverage, where we also have an abuse and and then one last thing I'll say, and then I'll, unless the Court has another question on that, and then I'll give the other side a chance to speak, is that I think the Court certainly overstepped in saying that the sublimate didn't apply on a duty to defend. Okay. Let's hear from Mr. Ealy. May it please the Court. Tucker Ealy on behalf of JG. I'll be handling the full 15 minutes for appellees. And it's subject to what the Court would like to hear. My plan for that 15 minutes is first to address the jurisdictional questions. And then on the merits, I want to briefly dispose of two of the issues because the Court doesn't need to reach them in order to affirm on the merits. And that's, one is coverage B, personal and advertising injury. Because if there's coverage A, which is bodily injury, then it doesn't matter whether there's coverage B. You still have a duty to defend. And then on the assault and battery endorsement, as Mr. Savern just said, even if there is an assault and battery, it's still a duty to defend. That just gets you to a sublimit and other exclusions. And so it doesn't matter. The assault and battery endorsement doesn't matter with respect to the Court's ruling on the duty to defend. The two substantive coverage issues, which I'll touch on after I address the jurisdictional questions that the Court will have to reach if it accepts jurisdiction, is the abuse and molestation exclusion. And the Court, District Court, got that right because the claims do not require sexual contact of a physical nature. And that's not an element of the TVPRA violation. And then the procedural argument, this was properly determined on a motion to dismiss. A duty to defend is uniquely suited for... Although you didn't challenge jurisdiction when we asked for the, we sent the supplemental question, you decided, uh, you know what, there's not jurisdiction. Your Honor, I confess that we did agree initially that there was jurisdiction here. And based on a reading of Ultratech, it looked like there was. But when the Court asked this jurisdictional question and we delved deeper, looking at those Third Circuit cases, looking more closely at the actual order from the Court in Ultratech, we did see that, in fact, I think there is a difference here. And it's, and it's, it's, Salin and Ultratech are distinguishable. There was directives by the Court, the District Courts in those cases, that you need to do something. You need to pay defense costs. You have to defend. Here, the District Court's order was much more narrow. It just said, Northfield's claims are dismissed to the extent that they seek a declaration that Northfield owes no duty to defend. That is not... Is it true that that's all the complaints saw? No, Your Honor, I, what, but the complaints saw it. I thought, I thought it sought both a judgment that there was no duty to, it said there's no coverage here. So there's no duty to defend nor duty to indemnify. And the District Court was saying, well, I don't, that, that's not ripe yet. Yeah, that's correct, Your Honor. What, what the, what the complaint, the declaratory judgment complaint in this case, what it said was Northfield brings this action to determine its coverage obligations. It wasn't limited to duty to defend. It was its coverage obligations. And as this Court knows, an insurance carrier's coverage obligations are both a duty to defend and a duty to indemnify. So both of those were subsumed in the declaratory relief sought by the appellant here in this case. And so that's why... And you can have a duty to defend in some circumstances, even if you don't have a duty to indemnify, right? Absolutely. Absolutely. That, that... It just depends on how the case ends up being litigated. And it might be at least arguably within coverage. So you have a duty to defend. It's a broader duty. But at the end of the day, the way the case gets actually decided, huh, you don't have a duty to indemnify to pay. Yep, that's right. And that, and that goes to the very nature of the duty to defend, right? And that's, and the District Court properly applied that standard here, that the duty to defend is very broad. And it's based on, is it even arguable? Is, is any conceivable set of facts potentially covered here? But how does it work in practice? So what you just described suggests that the other side doesn't have to pay you a penny until the end of the case. And so is that correct? No, Your Honor. What that means is that the duty to indemnify, to pay a judgment, that's not determined until after there's a judgment. But the duty to defend, that absolutely is right now. The District Court was correct to rule on that. Because that's just based on the possibility of coverage. If there is a possibility of coverage... Yeah, because there's a lawsuit. There's litigation. And so the defense costs have to be incurred. That's right. And so, and so it is accurate, if their recitation of the case law is correct, that those funds are gone. And therefore, technically, they don't have an opportunity to challenge that aspect of the Court's ruling. So what I would say to that is, and the decision from this Court on the reimbursement of its Winder Laboratories is the case. And what it says there, though, is if the insurance carrier doesn't include a right of recruitment, then they cannot seek it later. That's a choice that an insurance company makes to either include that or not. And as Chief Judge Pryor mentioned earlier... It's included in the policy itself? I'm sorry. Yes, Your Honor. You can include a reimbursement provision in the policy, in which case, a later decision after a trial, you can get your defense costs back. But there are other ways, as Chief Judge Pryor noted, that this could be immediately reviewable, either a 54B certification. They could have only brought the claim in the first instance on the duty to defend. They chose to... In which case, you have a final judgment under 1291. Absolutely. So that's more like a waiver, then, or an abandonment of some sort that they didn't use the avenues that the Chief Judge identified. You don't use those, you're out of luck? I don't think it is. That is addressing my friend's arguments about whether it's reviewable. I will say this. I don't think it matters whether it's reviewable, because the question, that goes, and I think that goes to the positon of place. I was going to say, I don't know if you want to say that. What I mean by that is that the discussions about whether something is a practical effect of an injunction says, first, it has to have the practical effect of an injunction. And then, in addition to that, it has to have serious, perhaps irreparable consequences. So I think they don't get past that first step. It doesn't have the practical effect of an injunction here. The district court didn't order Northfield to do anything. And I think the Third Circuit cases that this court cited in its questions on jurisdiction, I think, highlight that exactly. And we cited them in our brief on this. But the Zurn decision by the Third Circuit said it is this very lack of a directive that critically distinguishes this case from those cases. But you just said that they have to pay your attorney's fees along the way. Yes. How is that not a directive by saying, we dismiss your claim? So the district court here did not direct them to pay the attorney's fees. They did not direct them to defend. They came in and said, we don't want to pay them. And the district court said, complaint dismissed. Didn't direct them to do anything. That's right. What Northfield did is they came to the court saying, we want a declaration that we owe no duty to defend. And the district court said, no, reading this, you're not entitled to that declaration. That's not a coercive directive. So what happens when you submit your monthly time bills and they say we're not going to pay it? That's not contempt? I would not believe it is, Your Honor. I'll say this. I don't believe it has no consequences. That I think if Northfield abandoned their insured now after the district court's ruling, I think they might be subject to a breach of contract action, a bad faith claim. But those would be separate claims that are not in this declaratory judgment. Counselor, you could bring a cause of action and get an injunction making them defend. And the law of the case, doctor, would give you a judgment. I don't know that we could do that here. I think what I... No, no. In a separate case. Oh, correct. In a separate case, perhaps. In a separate case, you could file a suit, ask for an injunction. That's right. And this court's determination below wouldn't affect me. The law of the case would be over with. I think that's possible. That's possible. The way I would envision it really is it would be a breach of contract action, perhaps. Well, I understand. Yeah, but... Well, a breach of contract and no injunction because you have an adequate remedy. Yes, that's right, Your Honor. And I do want to make sure I take some time to address the merits and get to those unless there's any other questions. We started with the merits. I don't know if there was anything in it that I missed, but... I just want to make sure to the extent there's any questions on those points. And in particular, because I think, as I said before, the coverage being assault and battery endorsements, the court doesn't even need to reach those. And so I really think abuse and molestation is the heart of the issue there. And I just want to make sure that I talk about that because what we're dealing with here is really it's this arising out of language. The exclusion says it bars coverage for claims arising out of sexual abuse, molestation. And what this court has said is that... And it's read narrowly in an exclusion. It means a but-for causation test. And what this court has said is claim does not arise out of a circumstance. If independent of that circumstance, the claim could still exist. And the question here, therefore, is could J.G.'s claims have existed absent sexual abuse, absent physical contact of a sexual nature? And the district court correctly determined yes. And the critical distinction here that the district court got right, and what I believe the appellant gets wrong, is that sex trafficking is not a commercial sex act. Sex trafficking is far broader than a commercial sex act. And this court has said in United States v. Blake, the commission of a sex act is not even an element of Section 1591. Section 1591, 18 U.S.C. 1591, the TVPRA statute, it lists 10 violations, almost all of which don't involve physical contact of a sexual nature. And that's exactly what J.G. alleged here. She was harbored, transported, maintained at the United Inn. None of those violations require physical contact or involve physical contact of a sexual nature. And those claims exist independently of any commercial sex act that might have happened. And I'll say this, that a sex act cannot be the genesis of a claim if it's not even an element of the claim. And it can't be the but-for cause of a claim if the claim could exist independently of it. Right? I mean, here, J.G.'s actionable claims were complete before any sex act took place. And even if no sex act had ever taken place, her claims were, her actionable claims were complete. And therefore, the district court was absolutely correct in finding that there was a possibility of coverage here under the policy and that the sexual abuse and molestation, the abuse and molestation exclusion doesn't bar coverage. There's at least a potential here for claims that are not barred by coverage. And then, and then the last thing I'll just say, and there was a procedural argument on the merits as well by the appellant, that this was not properly determined on a motion to dismiss. But what we're dealing with is duty to defend. All that's based on is a complaint, the underlying complaint J.G. filed and the insurance policy. Those two things were attached to the declaratory judgment action here. There's no other evidence needed. This determination is uniquely suited for resolution on a motion to dismiss. It would have been the same evidence had it been summary judgment. No counterclaims were needed. So, I think I have more time, but unless the court has additional questions on those points, I think I have covered what I, what I know. If you're asking me, would I mind you returning some time? Thank you. I think you know the answer. Yes. Can I buy that time? You already are over time, Mr. Saverin. You bought some time last time, but you are on our time. Well, I'll give you your five minutes. I think that was a grant by Judge Abudu, which I appreciate. But I think I, Yes, I think I was presiding and allowed that. I think I'll, I think five minutes is plenty. So, let me just, I guess, begin with where Mr. Ely left off. It's interesting that he says that the heart of this issue is the abuse and molestation. That's part of it, but the assault battery is broader. Again, the assault definition is any attempt or threat to inflict injury to another. Being held for sex trafficking, whether or not sex actually results, is what the heart of the complaint is about. And as I think I've covered already before, the fact that the injury she sustained could have been from things other than assault or other than abuse and molestation. That's what she's alleging here, and that's why we say that the assault and battery exclusion applies as well as the abuse and molestation. If the assault and battery exclusion applies, that puts it within the limited endorsement. Oh, I'm sorry. Just to clarify, at least do you agree that all of the allegations surround the same set of facts? And if so, how can the injuries related to that general set of facts not be related to the, not be covered under the policy? If I understand the court's question correctly, I'm not sure I did, but let me answer it, and if I didn't, you can let me know. That the standard is whether the injuries have their genesis in excluded conduct. So but for an assault as defined by the policy, or but for abuse and molestation, would JG have been held for sex trafficking? No, then that is not my question. My question has to do with the fact, from what I understand of the complaint, these individuals or this person was brought to this hotel area for sex against her will, let's say, arguably, and now she's alleged a lot of harms coming out of that scenario, environment, place in which she was subjected. Correct. And so I'm trying to understand your argument about exclusions, if indeed the injuries are not just having sex, but also all of the collateral consequences of that. How is that still not covered by the policy? I understand the question now. And the way I'd answer this way is because if it had not been for the sex trafficking, it had not been for the sex, if it had not been for the assault, which is the broader exclusion. I think I would have hygiene problems, maybe sleep deprivation, but certainly deterioration of at least some of the kinds alleged in this complaint if I was kept in an unsanitary hotel room for an extended period of time. That's correct. But the reason that she was being held there was for purposes of being assaulted. That may be, but that's not the sum total of her injury. Well, her injuries stem from that. And so her injuries stem from the assault, which is in any attempt or threat to inflict injury on another. She was being held there, and that's an assault in and of itself, because the injury was being held there and the sex trafficking. No one came to have sex with her during that entire period. I'm sorry? If no Johns came to the room. Yes. She would still suffer some of those injuries. Correct, and that would be within the assault and battery exclusion, Your Honor. No, it wouldn't. If no one came there? Yeah, because the assault is any attempt or threat to inflict injury. And just merely holding her there against her will is an injury in and of itself. Without any physical contact? Without any physical contact. That's the definition of assault in the, I would urge the court to look at its document 1-3, page 6, the definition of assault to any attempt or threat to inflict injury to another. It does not have the physical component that the district warden grafted on it. In the few seconds that are left, I just wanted to point out, I understand the court's concerns about jurisdiction. If we had moved to dismiss, if there was a claim to do move to dismiss without prejudice, we'd run into the problem of manufactured appellate jurisdiction. The last thing I want to say is that— I was very careful. I said, if you had moved to amend the complaint, to drop any complaint about a duty to indemnify, that's different. I understand. What's your response to that? My response to that is that the complaint was that there was no duty to defend, which encompassed the narrower duty to indemnify. We'll look at the complaint. I understand.  And see if it's limited to the duty to defend. Can I make one more point or is my time up? One more. 20 seconds. I got it. Ultratech says the district court, quote, James River has a duty to defend the insured and the underlying actions. This court said in the district court, Northfield has a duty to defend Northbrook and the underlying action, no distinction in our view. I understand. Thank you. We understand your case. We're going to be in recess until tomorrow.